UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THERESA NAOMI DEES,

        Plaintiff,

v.                                              Case No. 6:19-cv-1903-Orl-MAP

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## ORDER

      This is Plaintiff's second appeal of the administrative denial of her application for supplemental security income (SSI).[1]  *See* 42 U.S.C. § 1383(c)(3).  In her first appeal, Plaintiff successfully argued that the decision of the Administrative Law Judge (ALJ) was not supported by substantial evidence.  The district judge reversed the ALJ's decision and remanded the case to the agency. (R. 1018-35)  The Appeals Council (AC), in turn, vacated the ALJ's first decision and remanded the case "for further administrative proceedings consistent with the order of the court." (R. 1042)  The AC directed the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (*Id.*)  After a second administrative hearing (R. 937-71), the ALJ again found Plaintiff not disabled. (R. 902-30)  Once the ALJ's second decision became final (*see* R. 903), Plaintiff appealed to federal court.

      At this juncture, Plaintiff argues the ALJ did not comply with either the district judge's or the AC's remand orders and should have re-contacted Plaintiff's treating physician James Byrne,

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).  During the pendency of Plaintiff's claim, she changed her surname from Wallach to Dees; some medical records list her name as Theresa Wallach, some as Theresa Dees.

M.D., before denying her claim again.  Plaintiff also contends the ALJ did not articulate good cause to discount the opinions of treating neurologist Deepak Tikku, M.D.  After considering Plaintiff's arguments, Defendant's response, and the administrative record (Docs. 16, 20), I find the ALJ's second decision did not comply with the remand order.  His decision is reversed and remanded for further administrative proceedings.

   *A. Background*

   Plaintiff Theresa Dees was born on January 19, 1970, and was 43 years old on her alleged disability onset date of August 14, 2013. (R. 919)  Plaintiff graduated from high school and took college courses for one year. (R. 980)  She lives alone and has past work experience as a cleaner, housekeeper, and care giver. (R. 980, 983-84)  Plaintiff alleges disability due to degenerative disc disease (DDD), rheumatoid arthritis, fibromyalgia, and bipolar disorder.  Plaintiff's application was denied for the first time in April 2016. (R. 31-56)  On appeal, however, the district court found that the ALJ erred in discounting Plaintiff's credibility and the residual functional capacity (RFC) questionnaire submitted by Dr. Byrne. (R. 1018-35)  The ALJ had assigned no weight to Dr. Byrne's RFC determination because it was inconsistent with his treatment notes, yet the ALJ twice mentioned that Dr. Byrne's handwritten records were messy to the point of being illegible.  The district judge suggested in a footnote of his remand order: "On remand, the ALJ should consider contacting Dr. Byrne and inquiring about the content of his treatment notes and how such treatment notes relate to his findings in the RFC Questionnaire." (R. 1034, n. 4).  The AC vacated the first ALJ's decision and remanded the case to the agency for proceedings consistent with the district court's order. (R. 1039-44)

   The ALJ held a second hearing in May 2019 (R. 937-71), and issued a second opinion two months later. (R. 902-30)  The ALJ clarified at the outset that "[p]ursuant to the District Court

2

remand order, the Appeals Council has directed the undersigned to: Revisit the credibility findings; Specify how Dr. Byrne's treatment notes contradicted his RFC findings." (R. 905)  With this in mind, the ALJ found Plaintiff suffers from the severe impairments of DDD of her cervical and lumbar spine, rheumatoid arthritis, polyarthropathy, fibromyalgia, myasthenia gravis, migraines, hypertension, and bipolar depression. (R. 907)   Aided by the testimony of a VE, the ALJ determined Plaintiff is not disabled, despite these impairments, as she retains the RFC perform light work with some limitations:

> Specifically, she has the ability to lift and carry and push and pull 20 pounds occasionally (up to one third of the day), and 10 pounds frequently (up to two thirds of the day).  She can sit for four hours at a time and a total of eight hours during an eight-hour day.  She can stand and or walk for two hours at a time and a total of eight hours during an eight-hour day.  She can stand and or walk for two hours at a time and a total of six hours during an eight-hour day.  She can occasionally climb ladders, frequently climb stairs and ramps and frequently balance, stoop, kneel, crouch and crawl.  She has no limitations regarding manipulation, vision or communication.   She has environmental limitations precluding concentrated exposure to work hazards including unprotected heights and dangerous machinery. Mentally, she cannot perform complex tasks but can perform simple, routine tasks consistent with unskilled work with concentration on those tasks for two-hour periods with normal breaks and a lunch.

 (R. 909)  The ALJ found that, with this RFC, Plaintiff could not perform her past relevant work but could work as a laundry sorter, mail sorter, and a ticket seller. (R. 920)  Plaintiff waited the requisite 61 days for the ALJ's decision to become administratively final. (*See* R. 903)  Now, having exhausted her administrative remedies, she filed this action.

### B.  Standard of Review

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 1382c(a)(3)(A).  A "'physical or mental impairment'

is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the

ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

### C.  Discussion

#### 1.  ALJ's consideration of Dr. Tikku's opinions

Plaintiff's first argument is that the ALJ did not articulate good cause to discount Dr. Tikku's opinion, expressed on the disabled parking permit application he completed on Plaintiff's behalf, that Plaintiff is permanently disabled and cannot walk 200 feet without resting (doc. 20 at 17).  The Commissioner responds that Dr. Tikku's statement is an opinion on a dispositive issue reserved to the ALJ.  The Commissioner also contends that Dr. Tikku's check-the-box disabled parking permit application is unsupported by the medical record.  I agree with the Commissioner.

The method for weighing medical opinions under the Social Security Act is in the regulations at 20 C.F.R. § 416.927(c).  Relevant here, the opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 416.927(c)(1-5).  A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

5

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment." 20 C.F.R. § 416.927(c)(2).  With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8).  And the ALJ must state the weight given to different medical opinions and why. *Id*.  Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Plaintiff treated with Dr. Tikku from July 2015 through December 2018.  At Plaintiff's first appointment, her neurological evaluation showed largely normal results (R. 839), although Dr. Tikku noted Plaintiff saw other doctors for a "host of other medical problems" including fibromyalgia, anxiety, migraine headaches, shoulder and back pain, and glaucoma. (R. 1194) Based on Plaintiff's complaints, Dr. Tikku suspected she suffered from myasthenia gravis, and he ordered a brain MRI.[2] (*Id*.)  The MRI showed "[n]o evidence of intracranial mass lesion, acute infarction, hemorrhage, or obstructive hydrocephalus.  No significant signal abnormalities are identified in the brain parenchyma or brainstem." (R. 842)  At a follow-up appointment, Dr. Tikku again noted normal neurological findings; he prescribed Mestinon to control Plaintiff's symptoms and asked her to return in three months. (R. 845)  In October 2015, Plaintiff told Dr. Tikku she had

---

[2]  Myathenia gravis is a chronic autoimmune, neuromuscular disease that causes weakness in the skeletal muscles that worsens after activity and improves after rest.  Hallmark symptoms include drooping eyelids, blurred vision, weakness of the eye muscles, shortness of breath, impaired speech, and difficulty swallowing. See https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Myasthenia-Gravis-Fact-Sheet.

severe fatigue and generalized weakness, but she denied speech or swallowing problems. (R. 846) The neurologist wrote that "typically [severe fatigue and generalized weakness] would not be consistent with a myasthenia exacerbation," and he ordered blood work. (R. 848)  Two weeks later, Plaintiff reported that she had stopped taking Savella (prescribed by another doctor to control her fibromyalgia symptoms) and "her symptoms have improved significantly;" she was "stable." (R. 849, 851)

In February 2016, Plaintiff told Dr. Tikku about intermittent episodes of fatigue.  The neurologist wrote that there was "[n]o evidence of any exacerbation or worsening of her myasthenia gravis," and asked her to return in six months. (R. 1195)  The next treatment note is dated a year later, in February 2017.  Plaintiff reported she experienced fatigue and weakness throughout the day.  "[I]n addition she has multiple issues of chronic back pain, spinal stenosis, headaches, anxiety disorder and depression which make it difficult to determine if she is truly having fatigue secondary to myasthenia gravis or other medical issues." (R. 1189)  Dr. Tikku instructed Plaintiff to continue taking Mestinon and also prescribed Imuran, a medication used to treat rheumatoid arthritis.  His notes state, "patient given approved Handicap permit form." (R. 1191)

On the disabled parking permit application dated February 2017, Dr. Tikku checked the box authorizing a permanent permit, certifying that Plaintiff's "arthritic, neurological, or orthopedic condition" impairs her ability to walk 200 feet without stopping to rest. (R. 1192)  At an August 2017 appointment, Plaintiff reported to Dr. Tikku that "with the addition of Imuran her symptoms have improved and she has a history of having facial pain which has also improved after starting Imuran." (R. 1186)  He assessed her myasthenia gravis as "stable and has clinically gotten better after the addition of Imuran.  Her chronic back pain, headaches and anxiety disorder remains

7

unchanged." (R. 1188)  In February and December 2018, Plaintiff's headaches were controlled

with over-the-counter medications, and her myasthenia gravis was also under control – she had

"[n]o symptoms to suggest that she is having any kind of myasthenic crisis." (R. 1183)

> The ALJ summarized Dr. Tikku's records, writing:
>
> On February 27, 2017, Dr. Tikku completed a form for the claimant to obtain a
> disabled parking permit.  Dr. Tikku checked that the claimant has a severe
> limitation in her ability to walk due to an arthritic, neurological or orthopedic
> condition.  Dr. Tikku recommended that the claimant receive a permit because she
> could not walk 200 feet without stopping to rest.  No weight is accorded to this
> opinion from a treating source because it is inconsistent with the record as a whole,
> which shows that the claimant can perform a reduced range of light work as
> described in the residual functional capacity.

(R. 917)

Substantial evidence supports the ALJ's decision to assign no weight to the limitations Dr.

Tikku checked on Plaintiff's disabled parking permit.  First, it is a check-the-box form submitted

to the Florida Department of Highway Safety and Motor Vehicles, and decisions of other agencies

are not binding on the Social Security Administration.  20 C.F.R. § 416.904.  Second, the permit

does not constitute a finding of disability under the Social Security Act, nor is there evidence that

the state agency issued it after applying similar standards for determining disability.  *See Gjertsen*

*v. Comm'r of Soc. Sec.*, Case No. 2:17-cv-48-FtM-CM, 2018 WL 1313118, at *4 (M.D. Fla. Mar.

14, 2018).  Third, the limitation on Plaintiff's ability to walk is not supported in Dr. Tikku's

treatment notes.  He recorded steady improvement of Plaintiff's symptoms, basically normal

neurological findings, and conservative treatment.

Without developing the argument, Plaintiff also suggests that the ALJ erred because he did

not incorporate Dr. Tikku's limitation on Plaintiff's ability to walk into her RFC.  A claimant's

RFC is the most work she can do despite any limitations caused by her impairments.  20 C.F.R. §

416.945(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence. 20 C.F.R. § 416.945(a)(2), (e). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *See* 20 C.F.R. § 416.946(c).

The ALJ disregarded Dr. Tikku's limitations on Plaintiff's ability to walk in formulating her RFC for light work and instead found that Plaintiff can "stand and walk for two hours at a time and a total of six hours during an eight-hour day." (R. 909) As explained above, Dr. Tikku's treatment notes do not support a limitation on Plaintiff's ability to walk, and the ALJ properly disregarded the disabled parking permit Dr. Tikku completed for Plaintiff.

### 2. ALJ's compliance with AC's and district court's remand orders

Plaintiff argues the ALJ's second decision violates the mandate rule. The mandate rule requires compliance on remand with the appellate court's instructions. The rule forecloses re-litigation of any issue the appellate court expressly or impliedly decided. *See Johnson v. Keybank Nat'l Ass'n (In re Checking Account Overdraft Litig.),* 754 F.3d 1290, 1296 (11th Cir. 2014). Plaintiff contends the ALJ flouted the AC and district court's remand orders by disregarding Dr. Byrne's RFC assessment without good cause. According to Plaintiff, Dr. Byrne's handwritten treatment notes are, for the most part, illegible, so the ALJ had no basis for finding that the doctor's RFC assessment is inconsistent with them. The Commissioner retorts that the ALJ did not violate

the district judge's remand order and that Dr. Byrne's RFC assessment is inconsistent with Plaintiff's conservative treatment and the objective findings of other doctors.

To backtrack, the ALJ, in his first decision, assigned no weight to Dr. Byrne's RFC determination because it was inconsistent with his own treatment notes.  Yet the ALJ twice mentioned that Dr. Byrne's handwritten records are messy to the point of being illegible.  On appeal, the district court stated that "[w]hen finding that Dr. Byrne's treatment notes contradicted the RFC Questionnaire, the ALJ did not mention or cite a specific treatment note. R. 45.  Instead, the ALJ made a general citation to Dr. Byrne's treatment records. *Id.* (citing R. 398-412, 413-444, 647-662, 674-686, 694-710, 853-866)." (R. 1032)  Consequently, the district court found that "remand [was] warranted for the ALJ to specify how Dr. Byrne's treatment notes contradicted his own RFC Questionnaire." (R. 1033-34).  The district judge suggested in a footnote: "On remand, the ALJ should consider contacting Dr. Byrne and inquiring about the content of his treatment notes and how such treatment notes relate to his findings in the RFC Questionnaire." (R. 1034, n. 4).  The AC then vacated the first ALJ's decision and remanded the case to the agency for proceedings consistent with the district court's order. (R. 1039-44)

Dr. Byrne, a primary care physician, had treated Plaintiff since 2009, and in March 2014, he completed an RFC questionnaire on her behalf. (R. 503-07)  Like his treatment notes, his handwriting on the RFC form is hard to read, but he checked boxes indicating that Plaintiff can stand, sit, and walk for less than two hours each in an eight-hour workday, can never lift anything, and has significant limitations in reaching, handling, and fingering. (R. 503-06)  The doctor opined Plaintiff has 75% of the productivity level of a healthy worker due to a herniated disc and spinal stenosis. (R. 506)

In his second decision, the ALJ explained that "[p]ursuant to the District Court remand order, the Appeals Council has directed the undersigned to: Revisit the credibility findings; Specify how Dr. Byrne's treatment notes contradicted his RFC findings." (R. 905)   The ALJ again discounted Dr. Byrne's RFC assessment, according it no weight because it "is inconsistent with the conservative treatment, the lack of emergent care or more aggressive treatments.  Most of Dr. Byrnes' exam findings were essentially normal. . . . Dr. Byrne's opinion that the claimant is disabled is inconsistent with the objective exam findings of the claimant's other treating physicians." (R. 915)  The ALJ did not re-contact Dr. Byrne and again made a blanket citation to the doctor's largely illegible treatment notes. (R. 915)

Social Security regulations provide that, in the event the AC orders a remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."   20 C.F.R. §§ 404.977(b), 416.1477(b).  "A court 'may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate.'"  *Apone v. Comm'r of Soc. Sec. Admin.*, 435 F. App'x 864, 865 (11th Cir. 2011) (per curiam) (quoting *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985)).  The scope of the ALJ's review on remand from the district court differs depending on the language of the remand order and subsequent AC decision.  *See Spiceland v. Colvin*, No. 1:13-cv-114-MP-GRJ, 2014 WL 897003 (N.D. Fla. Mar. 6, 2014) (emphasizing the importance of the particular language of the remand order when determining the scope of the ALJ's review).

Here, the district court directed that the case be remanded to reassess Plaintiff's credibility (not an issue in this appeal) and specify how Dr. Byrne's treatment notes contradict his RFC finding.  The AC then directed the ALJ to conduct further proceedings consistent with the district

court's order.  For the ALJ to include another general cite to all of Dr Byrne's treatment notes does not rise to the level of specificity the district court and the AC envisioned.  The also ALJ cited to Dr. Tikku's overall conservative treatment of Plaintiff in support of his decision to discount Dr. Byrne's RFC assessment, but this is not what the district court directed him to do.  *See Wilson ex rel. T.M.W. v. Colvin*, No. 14-00400-N, 2015 WL 2248171, at * 7 (S.D. Ala. May 13, 2015) (remanding case to agency when ALJ did not comply with remand order to evaluate a teacher questionnaire; on remand, the ALJ only mentioned the questionnaire twice in passing).

To be sure, the difference between the analysis of Dr. Byrne's opinion in the first ALJ's decision as compared to the second ALJ's decision is that the second time around the ALJ had the benefit of additional treatment notes from Dr. Tikku.  As detailed above, Dr. Tikku, a neurologist, began treating Plaintiff in 2015 (before the ALJ's first decision), but saw Plaintiff more frequently between 2016 and 2018.  Dr. Tikku's notes are not inconsistent with the RFC for light work, as explained in the previous section.  The ALJ, however, was directed to explain the discrepancy he found between Dr. Byrne's illegible treatment notes and the doctor's own RFC assessment; he did not do so.

Generally, remand to the Commissioner "is warranted where the ALJ has failed to apply the correct legal standards."  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  This Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  *Id*.  Here, however, it is not clear that the cumulative effect of the evidence establishes disability without any doubt.  Thus, the Court will reverse and remand this action to the Commissioner.  On remand, the Commissioner shall comply with the district judge's remand order.

*D. Conclusion*

For the reasons stated above, it is ORDERED:

   (1)  The ALJ's decision is REVERSED and REMANDED; and

   (2)  The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on August 6, 2020.

*Mark A. Pizzo*

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

13